[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 787 
Gerald Gilbert and his wife, Joyce Gilbert, appeal from a contempt order finding Gerald Gilbert in contempt, entered by the trial court in a dispute between the Gilberts and his daughter, Brandy Nicholson, and her husband, James Nicholson, relating to a road to the Nicholsons' property. The Gilberts also appeal from the trial court's denial of certain motions they filed. We affirm the order finding Gerald Gilbert in contempt, but otherwise dismiss the appeal.
The trial court summarized the history of this case in its contempt order entered on November 2, 2001.
 "This case began with a Complaint being filed on the 11th day of March, 1999, by [the Nicholsons] seeking to enjoin [the Gilberts] from blocking a roadway to their homeplace. Thereafter, the parties agreed in Open Court that [the Gilberts] would convey [to the Nicholsons] another roadway or right of way over their property in order to allow [the Gilberts] to close the existing roadway, and furthermore, that [the Gilberts] would construct or have constructed said new roadway. Thereafter, the parties could not agree upon the materials, etc., to be used to construct said roadway, and the parties, by and through their attorneys of record, agreed for the Court to appoint Mr. David Edgil, the Walker County Engineer, as the Court's Special Master to inspect said roadway and see that the road was constructed according to his specifications, and the Court appointed Mr. David Edgil on December 20, 1999, and he has subsequently reported to the Court that the proposed roadway has not been constructed to his specifications, and some of the materials used were insufficient to maintain this roadway.
 "The agreement of the parties, through their attorneys of record, is attached hereto as `Exhibit A,' [Exhibit A is not attached to this opinion] . . . which agreement the Court has ordered to be enforced and has so ordered the parties to comply with said agreement in Open Court in the presence of all parties and their attorneys of record. The report of the Special Master, Mr. David Edgil, is attached hereto as `Exhibit B' [Exhibit B is not attached to this opinion] . . . .
 "The map of the proposed roadway is attached hereto as `Exhibit C,' [Exhibit C is not attached to this opinion] . . . which clearly defines the location of the roadway ordered to be constructed by the [Gilberts] herein.
 "This case was set for hearing on [the Nicholsons'] Petition for Rule Nisi on August 14, 2001, and the parties were present in Open Court with their respective attorneys of record . . . .
 "Defendant, Gerald Gilbert, admitted in Open Court that he was in Contempt of Court for his failure to comply with the Court's previous Orders, which ordered him and his wife to construct a certain roadway in accordance with the specifications in this Court's previous Orders, copies of which are attached hereto as `Exhibit D and E' [Exhibits D and E are not attached to this opinion] . . . . [The Gilberts] have also blocked the old roadway on more than one occasion, although they were previously ordered specifically not to do the same.
 "[The Nicholsons'] Petitions for Rule Nisi were set for hearing on one or more occasions, and `allegedly' settled, however, [the Gilberts] have changed *Page 788 
Attorneys on more than one occasion, and any `alleged settlement' has always `dissipated' after the date of the hearing.
 "The Court further finds that [the Gilberts] have refused to comply with the Court's previous Orders concerning said roadway, but that only defendant, Gerald Gilbert, has admitted he is in Contempt of Court, and therefore, defendant, Joyce Gilbert, is entitled to a hearing upon her part of the case as to the roadway, as well as, her failure to post the $25,000.00 Performance Bond, heretofore ordered by this Court on August 14, 2001, and the Court hereby sets Tuesday the 20th day of November, 2001, at 9:00 a.m. for said defendant, Joyce Gilbert, to appear in Open Court . . . to show cause, if any she has, why she also should not be held in Contempt of Court for her failure to comply with the previous Orders of this Court concerning said roadways, including the Court's Order of August 14, 2001, requiring her to post a Performance Bond in the sum of $25,000.00 to insure her performance and compliance with the previous Orders of this Court in this case.
 "This Court finds that defendant, Gerald Gilbert's, refusal to comply with the Court Order, as aforesaid, is based upon his contumacy rather than his inability, and furthermore, the Court finds defendant Gerald Gilbert, is in contempt of this Court.
 "Defendant, Gerald Gilbert, has been consistent in his refusal to comply with all of this Court's orders as aforesaid. This Court has given Mr. Gerald Gilbert several opportunities to comply with its orders; however, Mr. Gilbert has refused to comply with the same and has been flagrant in his violations of said orders. Those who seek equity must do equity. There must be a compliance with the Court's Orders, consequently, upon consideration of the foregoing;
"JUDGMENT
 "IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED, AND DECREED BY THIS COURT AS FOLLOWS:
 "1. That defendant, Gerald Gilbert's, failure to comply with the Court's Orders to construct said roadway, and his actions in blocking the existing roadway, and his refusal to file a performance bond of $25,000.00 to insure his performance and compliance with this Court's orders, is not due to his inability, but rather his contumacy.
 "2. That defendant, Gerald Gilbert, be and he is hereby found to be in Contempt of this Court.
 "3. That this Court hereby sentences the defendant, Gerald Gilbert, to be incarcerated in the Walker County Jail, unless and until he fully and completely complies with the Court's Orders pertaining to the roadways involved herein.
"4. . . . .
 "5. That defendant, Gerald Gilbert, may purge himself of Contempt of this Court by constructing or having constructed said road or roadway, in accordance with the Court's aforesaid Orders, and according to the specifications of the Court's Special Master, Mr. David Edgil, the Engineer for Walker County, Alabama, and further comply with all the Court's Orders . . . no later than November 19, 2001, at 12:00 p.m. (noon)."
The Court held two hearings after it entered its November 2, 2001, contempt order. On November 20, the Court heard testimony concerning Joyce Gilbert's alleged contempt of court. The Court also heard testimony and argument concerning two motions filed by the Gilberts — a motion to add an indispensable party and a motion to alter, amend, or vacate the trial court's November 2 order. The Gilberts *Page 789 
argued that Leady Gilbert, Gerald Gilbert's mother and Brandy Nicholson's grandmother, was an indispensable party to the action and that she should be made a defendant because, the Gilberts said, the road the Gilberts had agreed to construct crossed her property.
The Gilberts also argued that the trial court erred in ordering them to construct a road in accordance with specifications provided by David Edgil, the county engineer. The Gilberts acknowledged that they had agreed to provide another road across the property for the Nicholsons' use, but they argued that they did not agree to construct it according to Edgil's specifications. The trial court denied both motions on November 20, but took the matter of Joyce Gilbert's contempt under advisement. If the trial court ever entered a contempt order as to Joyce Gilbert, it does not appear in the record. Thereafter, the Gilberts filed the $25,000 performance bond required by the court and filed a motion to stay Gerald Gilbert's incarceration. The trial court held a hearing on the motion to stay Gerald Gilbert's incarceration and granted the motion to allow Gerald Gilbert to be released from jail with further instructions from the court to comply with its previous orders. The court scheduled another hearing for April 2002.
The Gilberts appealed. Their notice of appeal states that they are appealing from a judgment of November 1[1] and a postjudgment order of November 20. In addition to arguing that the trial court erred in finding them in contempt,[2] they also argue that the trial court failed to make "correct" findings of fact, that the trial court erred in denying their motion to add Leady Gilbert as an indispensable party, and that the trial court erred in denying their motion to alter, amend, or vacate the November 2 order. To the extent that the Gilberts attempt to appeal orders relating to the merits of the underlying case, their appeal is premature, because no final judgment has been entered in the case. At a hearing conducted in August 2001, the Nicholsons' attorney stated:
 "Your Honor, it's my understanding that the parties have reached an agreement that all issues presently pending before the Court would be reserved for ruling, final ruling pending a compliance with the agreement first of all, and compliance will require that the [Gilberts] contact the special master that we appointed, Mr. Edgil, and have Mr. Edgil go out with him and to give specifications as to what needs to be done in order to bring the road up to standards.
 "After Mr. Edgil has gone out and given this information, and it may be the same information that's in his report already, but after this information is given by Mr. Edgil, [the Gilberts have] agreed to comply in full with whatever requirements Mr. Edgil states."
(Emphasis added.) The Gilberts' attorney responded: "We understand thisis to be the agreement. We also understand that once the road is completed and the engineer, county engineer, Mr. Edgil, says yes, this is it, then my clients' obligations or any further maintenance of that road are extinguished." (Emphasis added.)
It is clear that no final judgment will be entered on the merits in this case until the Gilberts have complied with the parties' agreement that they construct a *Page 790 
new roadway for the Nicholsons' use to replace an existing roadway. It is clear from the record before us that the Gilberts have not yet complied; therefore, the trial court has not yet entered a final judgment as to the merits of this case that would support an appeal. It is well settled that "[a]n appeal will not lie from an order or judgment which is not final."Robinson v. Computer Servicenters, Inc., 360 So.2d 299, 302 (Ala. 1978). We dismiss the Gilberts' appeal, to the extent that it addresses the merits of the underlying case.
While no appeal from a final judgment is yet before us, the Gilberts' attack on the trial court's jurisdiction for failure to join an indispensable party makes it necessary for us to review the trial court's otherwise interlocutory order denying the Gilberts' motion to join Leady Gilbert as an indispensable party. The absence of an indispensable party is a jurisdictional defect that renders the proceeding void. Davis v.Burnette, 341 So.2d 118 (Ala. 1976). Therefore, to the extent that the absence of an indispensable party would constitute a defense to the contempt adjudication challenged by the Gilberts, we must consider the propriety of the trial court's denial of the Gilbert's Rule 19, Ala.R.Civ.P., motion. Ex parte NAACP, 265 Ala. 349, 91 So.2d 214 (1956),rev'd on other grounds, 357 U.S. 449 (1958).
The Gilberts contended in their answer to the Nicholsons' March 1999 complaint that the complaint should be dismissed because the Nicholsons had failed to join Leady Gilbert, who, the Gilberts argue, was an indispensable party. The record reflects that after the Gilberts filed their answer, the parties agreed not to join Leady Gilbert because of her age, her relationship to the parties, and the fact that she had consented to the new road. It was not until November 2001 that the Gilberts attempted to insist that the action could not be maintained without Leady Gilbert.
The absence of an indispensable party can be raised for the first time on appeal by the parties or by the appellate court ex mero motu, even if the parties did not present the issue to the trial court. Crum v.SouthTrust Bank of Alabama, N.A., 598 So.2d 867 (Ala. 1992); J.C. JacobsBanking Co. v. Campbell, 406 So.2d 834 (Ala. 1981). Therefore, the Gilberts' delay in arguing this issue to the trial court is not dispositive. The rule, however, gives the trial court the discretion to permit or to deny the joinder of an additional party. See Rule 19(b), Ala.R.Civ.P.; Felder v. State, 515 So.2d 17 (Ala.Civ.App. 1987). The record contains no evidence indicating that Leady Gilbert ever objected to the road that is the subject of this case or that she contributed in any way to the Gilberts' failure and/or refusal to construct the road in accordance with the court's orders. Under the circumstances here presented, we conclude that the trial court did not abuse its discretion in denying the Gilberts' motion to add Leady Gilbert as an additional party and that her absence does not render the proceeding void. We therefore affirm the trial court's order denying the Gilberts' motion to join Leady Gilbert.
We turn now to the November 2 contempt order. In that order, the trial court found only Gerald Gilbert in contempt of court. The record does not contain any order finding Joyce Gilbert in contempt of court, although a hearing ostensibly on that matter was conducted on November 20. We also dismiss the appeal to the extent that it addresses the alleged contempt of Joyce Gilbert.
Rule 70A, Ala.R.Civ.P., controls contempt proceedings that arise out of civil actions, whether the contempt is civil or criminal. Although the trial court's order does not specify whether it found Gerald *Page 791 
Gilbert in civil contempt or in criminal contempt, these proceedings clearly deal with civil contempt. Civil contempt is defined as "willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with." Rule 70A(a)(2)(D). See also Ex parte J.R.W., 667 So.2d 88 (Ala. 1995) (civil contempt involves a party's failure to do something ordered by the court for the benefit of the opposing party). An adjudication of contempt is reviewable by appeal, whether or not the contemnor is being held in custody. Rule 70A(g).
From the record before us, we know that the trial court released Gerald Gilbert from jail on December 18, 2001, and scheduled another hearing in the case for April 2002. For all that appears, Gerald Gilbert could have purged himself of contempt before the April 2002 hearing. Nevertheless, in a case decided before the Alabama Rules of Civil Procedure were amended to allow a contemnor to appeal whether or not he was incarcerated, this Court held that the contemnor was entitled to a review on the merits of his contempt adjudication even though he had purged himself of contempt by paying a judgment for past-due child support in order to secure his release from jail. Ex parte Parmer, 373 So.2d 845 (Ala. 1979). Therefore, even if Gerald Gilbert purged himself of contempt after appealing his contempt adjudication, that aspect of his appeal would not be moot, and we will address the contempt order.
We review a circuit court's finding of civil contempt under an abuse-of-discretion standard. Cavender v. State Mut. Ins. Co.,748 So.2d 863 (Ala. 1999). When evidence in a contempt case is presented ore tenus to the trial court, the trial court's finding regarding contempt is presumed correct. See, e.g., Varner v. Varner, 662 So.2d 273
(Ala.Civ.App. 1994); Cohn v. Cohn, 658 So.2d 479 (Ala.Civ.App. 1994).
In appealing the contempt order, the Gilberts argue that their agreement to construct a new road for use by the Nicholsons did not include an agreement to construct it in accord with specifications to be established later by a third party and that the trial court erred in requiring them to construct the road in accordance with specifications supplied by David Edgil. Their only understanding, say the Gilberts, was that Edgil was to be appointed as a special master for the purpose of inspecting the new road and reporting to the court. This argument is directly contradicted by the portion of the transcript quoted above, discussing the parties' understanding of their agreement.
The Gilberts also argue that they have "done everything they can do within their means," but that "for reasons unknown to [them], their duties and obligations were extended beyond what they had agreed to." Gerald Gilbert testified that building the road called for by Edgil would cost approximately $25,000, that his and his wife's combined gross income for the year 2000 was only $22,161, and that he could not comply with the court's order to build the road in accordance with Edgil's specifications. The record is silent as to the actual cost of construction, but it does reflect that friends have offered to assist Gerald Gilbert in complying with the court's orders.
The inability of a party to obey a court order is a defense to a charge of contempt. Ex parte J.R.W., 667 So.2d 74, 77 (Ala. 1994). The trial court resolved the issue of Gerald Gilbert's inability to comply against him after hearing evidence presented ore tenus. In light of the trial court's numerous opportunities to hear testimony from and to observe the parties, we *Page 792 
conclude that the court did not abuse its discretion in finding Gerald Gilbert in contempt of court, and we affirm the contempt order of November 2.
We affirm the trial court's orders denying the Gilberts' motion to join Leady Gilbert as an indispensable party and finding Gerald Gilbert in contempt of court. In all other respects, we dismiss the Gilberts' appeal.
AFFIRMED IN PART; APPEAL DISMISSED IN PART.
Moore, C.J., and Houston, Johnstone, and Woodall, JJ., concur.
[1] The trial court's order was signed on November 1, but it was not entered until November 2.
[2] Although the Gilberts argue that the trial court erred in finding both of them in contempt of court, as we discuss later, the record does not contain any contempt order pertaining to Joyce Gilbert.