PARKER, Justice.
Laura Miller appeals from..a summary judgment entered by the Jefferson Circuit Court (“the circuit court”) in favor of the City of Birmingham (“the City”), Sandy Roberts, and Alice Crutchfield (hereinafter referred to collectively as “the City defendants”).
I. Facts and Procedural History
Robert Jeffrey Miller, Mrs. Miller’s husband, was employed by the City as a firefighter. Unum Life Insurance Company of America (“Unum”) issued a group life and *222 accidental death and. dismemberment policy, identification number 293964 001, to the City on July 1, 2011 (“the policy”). The policy provided life-insurance benefits to eligible employees of the City. The policy itself has not been submitted into evidence; however, a summary of the benefits of the policy was submitted by Mrs, Miller. According to the summary of benefits, the policy included different life-insurance benefits for active employees and for retired employees. Under the policy, as an active employee, the City paid Mr. Miller’s insurance premiums and Mr, Miller was entitled to a life-insurance benefit . of $151,000, a result reached by multiplying his annual earnings by 1.75. However, if Mr. Miller were to become a retiree, he would be required to pay his life-insurance premiums and would be entitled to only a $50,000 life-insurance benefit,. The summary of benefits also included , the following provision: “What happens to your life insurance coverage if you become disabled? Your life insurance coverage may be continued for a specific time and your life insurance premium will be waived if you qualify as described below.” The summary of benefits specified that, in order to be eligible for a waiver of the life-insurance premiums, the insured had to “be disabled through your elimination period,” which is nine months. The summary of benefits further stated:
“When will your life insurance premium waiver begin?
[[Image here]]
“Your life insurance premium waiver will begin when we approve your claim, if the elimination period has ended and you meet the following conditions. Your Employer may continue premium payments until Unum notifies your Employer of the date your life insurance premium waiver begins.
“Your life insurance premium will be waived if you meet these conditions:
“you are less than 60 and insured under the plan.
“you become disabled and remain disabled during the elimination period.
,“you meet the notice and proof of claim requirements for disability while your life insurance is in effect or within three months after it ends.
“your claim is approved by Unum. “After we approve your claim, Unum does not require further premium payments for you while you remain disabled according to the terms and provisions of the plan. ,
“Your life insurance amount will not increase while your life insurance premiums are being waived. Your life, insurance amount will reduce or cease at any time it would reduce or cease if you had not been disabled.”
In May 2012, Mr. Miller was .diagnosed with brain cancer and soon became-unable to perform the duties of his job. Mrs. Miller’s affidavit states that when the Millers discovered that Mr. Miller’s condition was terminal, they “sought to obtain infor-' mation about [Mr. Miller’s] life insurance benefit and all other benefits that might be available.” The Millers did not have a copy of the policy or the summary of benefits at that time. On March 28, 2013, the Millers and Ed Bluemly, Mrs. Miller’s brother-in-law, met with Sandy Roberts, the assistant benefit administrator and the pension coordinator for the Jefferson County Personnel Board, and Alice Crutchfield, a personnel technician for the Jefferson County Personnel Board, to learn about the benefits available to Mr. Miller. In her affidavit, Mrs. Miller states the following concerning, that meeting:
“At that meeting, we were told that if [Mr. Miller] could not return to work, he would have to ‘retire.’ We wanted to know how we could keep his group life insurance. We were told by [Roberts *223 and Crutchfield], without any hesitation, that the only option we had was to convert the life insurance to retiree life insurance. That meant that the life insurance level of coverage at $151,000.00 would drop to $50,000.00. We did not like this, but [Roberts and Crutchfield] were very clear and firm in their statements. They provided forms and indicated to me and [Mr. Miller] that [Mr. Miller] would have to sign the forms to convert the policy.
“[Mr. Miller] and I went over the forms and he signed them before leaving the meeting. ... However, [Roberts and Crutchfield] spoke very clearly as if they knew what they were doing and as'if they were the authority on the subject for the City.
“I still wanted a copy of the policy or certificate, as did my brother-in-law, Ed Bluemly, and we both requested a copy of the policy. [Roberts and Crutchfield] told us there was not a copy of the policy or certificate. They could not obtain one, nor could they tell us how to obtain one.”[1]
Also concerning the March 28, 2013, meeting, Roberts’s affidavit states that she “did hear ... Crutchfield referencing UNUM Life Insurance products and specifically telling [the Millers] that their life insurance policy was with Unum Insurance.” Roberts’s affidavit also states that she did not recall “any persons requesting a copy of an insurance.plan from me during the meeting on or about March 28, 2013, nor do I recall any other person requesting an, insurance plan from me on behalf of the Millers at any time after this meeting.” Nothing in Roberts’s affidavit disputed Mrs. Miller’s and Bluemly’s assertion that Roberts and Crutchfield told the Millers that they had to convert Mr. Miller’s life insurance from active-employee to retiree life insurance. Crutchfield’s affidavit states that, at the March 28,2013, meeting, Crutchfield “referenced Unum Life Insurance beneficiary forms” and that no one “requested] a copy of a life insurance policy;” Crutchfield’s affidavit further states that, after, the March 28, 2018, meeting, she “never had any discussions with [the Millers] concerning life insurance benefits and/or life insurance policies” and that the Millers never requested “any life insurance policy and/or certificate of insurance.” Nothing.in Crutchfield’s affidavit disputed Mrs. Miller’s.assertion that Roberts and Crutchfield told the Millers that they had to convert Mr. Miller’s life insurance from active-employee to retiree life insurance.
After the meeting, the Millers continued to try to obtain a copy of the policy. To this end, the Millers asked several of Mr. Miller’s coworkers if they had a copy of the policy, and, if so, if they would share it with the Millers. On April 11, 2014, a coworker of Mr. Miller’s gave Mrs. Miller a copy of “a supplemental group life policy” from Unum under which Mr. Miller’s coworker had coverage; it is undisputed that that supplemental group life policy did not apply to Mr. Miller.
Ón May 5,2014, Mr. Miller died.
In November 2014, Mrs. Miller’s attorney sent .the, .City a letter requesting a copy of the policy. Qn November 24, 2014, Peggy Polk, director of the City’s office of personnel sent Mrs. Miller’s attorney a letter and a copy of the summary of the benefits of the policy. The subject line of Polk’s letter to Mrs. Miller’s attorney stated: “Life Insurance Errors as to Robert [M]iller (Deceásed).” Mrs. Miller’s affidavit states that the letter from Polk was not *224 received until “early December 2014.” Mrs. Miller’s affidavit states that, upon reviewing the summary of benefits, the Millers learned that the policy included “a disability waiver of premium benefit.” Mrs. Miller’s affidavit further states:
“It appears that [Mr. ■ Miller] and I were misinformed by Sandy Roberts and Alice Crutchfield as to the existence of the disability waiver of premium benefit. This benefit would have saved us from having to pay for ‘retiree life insurance’ and [Mr. Miller] should have instead been able to keep the full policy benefit of $151,000.00, at no cost to us, rather than just $50,000.00.”
The City defendants do not dispute the accuracy of this portion of Mrs. Miller’s affidavit.
On January 16, 2015, Mrs. Miller filed a claim with the City alleging that Roberts and Crutchfield had been negligent in failing to inform the Millers “as to the existence of the disability waiver of premium benefit” and requesting $101,000. In a letter to the City accompanying Mrs. Miller’s claim, Mrs. Miller’s attqrney stated that Mrs. Miller “does not contend she will be damaged unless Unum refuses to undo or correct the issues involved in this matter.” The letter also stated:
“We will be sending a copy of this also to Unum to request and demand that they pay the full life insurance proceeds which should have been paid, but for the incorrect information being provided [by Roberts and Crutchfield]. In any event, it appears to be prudent to provide this claim notwithstanding. We will be working with Unum to accomplish this and if this is not successful we will let the City of Birmingham know.”
Unum denied Mrs. Miller’s request; Unum was under no obligation to honor Mrs. Miller’s request because Mr. Miller had voluntarily converted his life insurance to “retiree life insurance” and Unum acted accordingly.
On May 4, 2015, Mrs. Miller sued the City defendants, alleging one claim of misrepresentation. The complaint alleged that the City defendants “made false representations as to material facts as to the amount of life insurance Mr. Miller was allowed to keep in place” and that “these representations were reckless, wanton, grossly negligent, and/or negligent.” The complaint further alleged that Mrs. Miller “reasonably relied on these representations and had no evidence that the representations were false until after receiving a copy of the [policy] provided by [Polk] in December of 2014.” Mrs. Miller requested, among other things, damages in the amount of $101,000 “in lost life insurance proceeds.”
On January 20, 2016, the City defendants filed a motion for a summary judgment. The City defendants argued that they were entitled to a summary judgment because (1) Mrs. Miller’s claim was barred both by the statute of limitations set forth in § 6-2-38, Ala. Code 1975, and by § 11-47-23, Ala. Code 1975, the notice-of-claim statute for municipalities, (2) the City is immune from Mrs. Miller’s misrepresentation claim under § 11-47-190, Ala. Code 1975, (3) Mrs. Miller failed to add Unum, an allegedly indispensable party, which, the City defendants argued, deprived the circuit court of subject-matter jurisdiction, and (4) Unum is jointly liable with the City defendants and, thus, required to be joined as a party under § 11-47-191, Ala. Code 1975.
At some point thereafter, Mrs. Miller filed notices of depositions of Roberts and Crutchfield. On January 29, 2016, the City defendants filed a “motion to quash” Mrs. Miller’s notices of depositions of Roberts and Crutchfield. The sole basis for the City defendants’ motion to quash the depo *225 sitions was that Unum was an indispensable party under Rule 19. The City defendants also argued that Unum’s absence from the action deprived the circuit court of subject-matter jurisdiction over Mrs. Miller’s claim against them. Mrs. Miller filed a response to the City defendants’ motion to quash.
On February 27, 2016, Mrs. Miller filed a “motion for partial summary judgment on the issue of liability.” Mrs. Miller argued that she had presented substantial evidence to support each element of her misrepresentation claim and that there was no genuine issue of material fact. In support of her summary-judgment motion, Mrs. Miller presented, among other things, a copy of the summary of benefits and' several other documents concerning the policy, the affidavit of Bluemly, and Mrs. Miller’s own affidavit.
On March 4, 2016, the City defendants filed a motion to strike certain exhibits to Mrs. Miller’s summary-judgment motion and references to those exhibits in the motion. Specifically, the City defendants argued that Mrs. Miller’s summary-judgment motion contained facts that were not supported by specific references to Mrs. Miller’s exhibits. The City defendants requested that the circuit court strike the following portions of Mrs. Miller’s .brief in support of her summary-judgment motion and the following evidence she submitted in support of her summary-judgment motion:
“(1) strike all unsupported allegations of [Mrs. Miller’s], Brief or instruct [Mrs. Miller] to resubmit the brief in compliance with Rule 56(c)(l)[, Ala. R. Civ. P.];
(2) exclude all UNUM' insurance documents constituting hearsay ([Mrs. Miller’s] Exhibit D & F)[2]; (3) exclude the Bluemly Affidavit ([Mrs; Miller’s] Exhibit C) as impermissible- hearsay; and (4) exclude all 'portions of [Mrs.] Miller[’s] Affidavit ([Mrs. Miller’s] Exhibit B) that are not based on persoiial knowledge or admissible evidence.”[3]
The City defendants identified the following specific portions of Mrs. Miller’s affidavit they sought to .strike:
“I still wanted a copy of the policy or certificate, as did my brother-in-law, Ed Bluemly, and we both requested a copy of the policy. ...
[[Image here]]
. Finally, less than 30 days before Jeffrey died, a fellow battalion friend of Jeffery’s named Buddy logged into his computer and found a supplemental group life policy .... [H]e claimed he obtained a copy off his computer at work and then e-mailed it to his wife and then his wife e-mailed it to me. I am not saying that I was there when his friend obtained a copy from the computer at work, nor was I there when his wife, Sabrina, e-mailed the document to me.
[[Image here]]
“I do not know too much about policies, but my brother-in-law, Ed Bluemly, does and I let him look it over. He assured me that his was not the correct policy, as it did not have the correct terms and information. ...”
On March 7, 2016, Mrs. Miller responded to the City defendants’ summary-judg *226 ment motion. Mrs. Miller argued that she had asserted her claim within the applicable statutory limitations period and that the City .defendants were barred.by. the doctrine of equitable estoppel from asserting that § 11-47-23 barred her misrepresentation claim. Mrs. Miller also argued that Unum is not an indispensable-party under Rule 19, Ala. R. Civ. P. Mrs. Miller attached to her response most of the same exhibits that she had submitted in support of her motion for a partial summary judgment. Further, Mrs. Miller presented a Rule 56(f), Ala. R. Civ. P., affidavit of her trial counsel explaining Mrs. Miller’s need for the City to respond to the entirety of her interrogatories and for the need to depose Roberts and Crutchfield.
On March 8, 2016, the City defendants filed a reply to Mrs. Miller’s response to their motion for a summary judgment. On the same day, the City defendants also filed a motion to strike portions of Mrs. Miller’s response, for the' same reasons they had moved to strike portions of her summary-judgment motion. The City defendants requested that the same portions of Mrs. Miller’s affidavit be struck that they had requested be stricken in their March 4,2016, motion to strike.
On March 31, 2016, Mrs. Miller filed the affidavit of Jamie L. Langlois, an implementation consultant for Unum Group, Unum’s parent company, in support of her summary-judgment motion. On April 5, 2016, the City defendants filed a motion to strike Langlois’s affidavit. The City defendants argued that Langlois’s affidavit was inadmissible hearsay and was barred .by the “best evidence rule.”
On April 21, 2016, the City defendants filed a response to Mrs. Miller’s summary-judgment motion. The City defendants argued that Mrs. Miller’s summary-judgment motion should be denied for the following reasons:
“(1) [Gjenuine issues of material fact exist[ ]; (2) [Mrs. Miller’s] elaim[ ] against [the City defendants is] barred by the statute of limitations; (3) the City is immune to all claims arising "from alleged intentional and/or wanton conduct of its employees; (4) [Mrs. Miller] failed to name all indispensable/jointly liable parties to allow the court to enter any final judgment in this matter; and (5) Defendants, Crutchfield and Roberts, have qualified immunity to the claim[] [as to which Mrs. Miller] seeks summary judgment.”
On April 22, 2016, Mrs. Miller filed a reply, ■ arguing that further discovery was necessary to develop the record.
On June 6, 2016, the circuit court granted the City defendants’ summary-judgment motion and denied Mrs. Miller’s summary-judgment motion.[4] Contemporaneously, the circuit court granted the City defendants’ “motion to strike.” The circuit court granted a singular motion to strike"; it did not specify which one of the City defendants’ three pending motions to strike it was granting.
On July 8, 2016, Mrs. Miller appealed.
II. Standard of Review
Our standard of review of a summary judgment is well settled:
*227 “ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion.... ’ McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957; 958 (Ala. 1992).
“‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court' is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the non-moving party must present “substantial evidence” creating a genuine issue of material fact—“evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact. sought to be proved.” Ala. Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).’
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004).”
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala. 2006).
 In arriving at its decision on the summary-judgment motions, the circuit court also ruled on several discovery matters.
“Our standard of review in matters involving discovery is limited to determining whether the trial court exceeded its discretion in making its discovery decision. Rankin v. First Nat’l Bank of Alabama, 437 So.2d 503 (Ala. 1983). An appellate court will not reverse the trial court’s decision regarding a discovery matter unless there is a clear showing that the trial court exceeded its discretion. Ex parte McTier, 414 So.2d 460 (Ala. 1982).”
Wheeler v. George, 39 So.3d 1061, 1078 (Ala. 2009).
III. Discussion
Initially, we note that Mrs. Miller argues that the circuit court exceeded its discretion in entering several discovery orders. We address , some of her arguments insofar as they relate to her arguments that the circuit court erred in granting the City defendants’ summary-judgment motion. However, our conclusion that the cir'cuit court erred in certain respects in granting "the City defendants’ summary-judgment motion pretermits our discussion of the remainder of Mrs. Miller’s discovery arguments.
As set forth above, the City defendants asserted various’ arguments in support of their summary-judgment motion. Specifically, the City defendants argued below that they wece entitled to a summary judgment based on the following grounds: (1) Mrs. Miller failed to join Unum as an allegedly indispensable party; (2) Mrs. Miller failed to, join Unum as a jointly liable party under § 11-47-191; (3) Mrs. Miller’s claim is barred under both § 11-47-23 and § 6-2-38; and (4) the City is immune from liability under § 11-47-190. The circuit court entered a general order granting the City defendants’ summary-judgment motion; it did not provide any explanation. Mrs. Miller argues that none *228 of the arguments asserted by the City defendants in support of their summary-judgment motion provides a valid basis for the circuit court’s judgment.
A. Are the City defendants entitled to a summary judgment because Mrs. Miller failed to join Unum as an indispensable party?
Mrs. Miller argues that the City defendants’ argument that they are entitled to a summary judgment based on her failure to add Unum as an indispensable party does not provide a basis for the summary judgment in the City defendants’ favor. Rule 19, Ala. R. Civ. P., requires that the plaintiff in an action join any indispensable parties if feasible:
“(a) Persons to Be Joined If Feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person’s absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person’s absence may (i) as a practical matter impair or impede the person’s ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.
“(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(l)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person’s absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person’s absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoin-der.”
This Court discussed the application of Rule 19 in Liberty National Life Insurance Co. v. University of Alabama Health Services Foundation, P.C., 881 So.2d 1013 (Ala. 2003):
“We have discussed the application of Rule 19 as follows:
“‘“Rule 19, Ala. R. Civ. P., provides for joinder of persons needed for just adjudication. Its purposes include the promotion of judicial efficiency and the final determination of litigation by including all parties directly interested in the controversy. Hooper v. Huey, 293 Ala. 63, 69, 300 So.2d 100, 105 (1974), overruled on other grounds, Bardin v, Jones, 371 So.2d 23 (Ala. 1979).’ ”
“Dawkins v. Walker, 794 So.2d 333, 336 (Ala. 2001) (quoting Byrd Cos. v. Smith, 591 So.2d 844, 846 (Ala. 1991)).
“ ‘Rule 19, [Ala.] R. Civ. P., provides a two-step process for the trial court to follow in determining whether a party is necessary or indispensable. Ross v. Luton, 456 So.2d 249, 256 *229 (Ala. 1984), citing Note, Rule 19 in Alabama, 33 Ala. L. Rev. 439, 446 (1982). First, the court must determine whether the absentee is one who should be joined if feasible under subdivision (a). If the court determines that the absentee should be joined but' cannot be made a party, the provisions of (b) are used to determine whether an action can proceed in the absence of such a.person. Loving v. Wilson, 494 So.2d 68 (Ala. 1986); Ross v. Luton, 456 So.2d 249 (Ala. 1984). It is the plaintiffs duty under this rule to join as a party anyone required to be joined. J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834 (Ala. 1981).
[[Image here]]
“‘We note that the interest to be protected must be a legally protected interest, not just a financial interest. Ross, supra; see Realty Growth Investors v. Commercial & Indus. Bank, 370 So.2d 297 (Ala. Civ. App. 1979), cert. denied, 370 So.2d 306 (Ala. 1979). There is no prescribed formula for determining whether a party is a necessary one or an indispensable one. This question is to be decided in the context of each particular case. J.R, McClenney & Son v. Reimer, 435 So.2d 50 (Ala. 1983), citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).’
“Holland v. City of Alabaster, 566 So.2d 224, 226-27 (Ala. 1990) (emphasis omitted). ‘The absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment.’ J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 850-51 (Ala. 1981). See also Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 945 (Ala. 1994) (Almon, J., concurring in part and dissenting in part).”
881 So.2d at 1021-22.
Initially, we note that it does not appear that the circuit court granted the City defendants’ summary-judgment motion on this ground. In granting the City defendants’ summary-judgment motion, the circuit court specifically stated: “This case i[s] dismissed with prejudice.” (Emphasis added.) However, as immediately set forth above, this Court has stated that “ ‘[t]he absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment.’ J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 850-51 (Ala. 1981).” Liberty National, 881 So.2d at 1022 (emphasis added). Therefore, because the circuit court “dismissed” Mrs. Miller’s action with prejudice, it appears that the circuit court did not find .this argument of the City defendants convincing and entered the summary judgment based on an argument going to the actual merits of the case. Regardless,, out of an abundance of caution, we will address Mrs. Miller’s argument that Unum is not an indispensable party.
Further, we note that the City defendants argued that; Mrs. Miller’s failure to join Unum as an indispensable party deprived the circuit court of subject-matter jurisdiction. The City defendants are incorrect. In Campbell v. Taylor, 159 So.3d 4 (Ala. 2014), this Court definitively stated that the failure to join an indispensable party does not affect the subject-matter jurisdiction of a court:
“This Court has long referred to a failure to join a ‘necessary’ or ‘indispensable’ party as a ‘jurisdictional defect.’ See Gilbert v. Nicholson, 845 So.2d 785, 790 (Ala. 2002) (‘The absence of an indispensable party is a jurisdictional defect *230 that renders the proceeding void.’ (citing Davis v. Burnette, 341 So.2d 118 (Ala. 1976))); Rogers v. Smith, 287 Ala. 118, 123, 248 So.2d 713, 717 (1971) (‘[T]he absence of necessary or indispensable parties ... is a jurisdictional de? feet....’). See also J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834 (Ala. 1981); Johnston v. White-Spunner, 342 So.2d 754, 759 (Ala. 1977); and Burnett v. Munoz, 853 So.2d 963 (Ala, Civ. App. 2002). But see Holland v. City of Alabaster, 566 So.2d 224 (Ala. 1990) (addressing the issue of the absence of an indispensable party as one of error on the part of the trial court). This is so, even after the adoption in 1973 of Rule 19, Ala. R. Civ. P.:, which addresses the ‘Joinder of Persons Needed for Just Adjudication.’ Indeed, Rule 19 wholly fails to speak in terms of jurisdiction, and nothing in that rule indicates that if the court fails to address the necessity or indispensability of a particular party or does address, and errs with regard to the resolution of, Rule 19 concerns, any ensuing judgment is: void. See Adams v. Boyles, 610 So.2d 1156, 1157 n. 1 (Ala. 1992) (reiterating ‘that failure to join even an indispensable party does not automatically compel dismissal’),”
159 So.3d at 9. See also Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1611 (3d éd. 2001)(“Because an objection to the failure to join a person who should be regarded as indispensable under Rule 19(b) may be raised as late as on an appeal from a final judgment or by the court on its own motion, the impression is created that a failure to join is jurisdictional, since ordinarily only jurisdictional -defects are treated in‘this fashion. Thus, it is not surprising that cases can be found that speak of nonjoinder as ousting the court of jurisdiction. Since the indispensable-party doctrine is equitable both in its origin and nature, however, scholarly commentary as well as the vast majority of courts reject this ‘jurisdictional’ characterization.” (footnotes omitted)).
Under Campbell, it is clear that the absence of an indispensable party does not deprive the-circuit court of subject-matter jurisdiction. “[A]: circuit court’s subject-matter jurisdiction is derived from the Alabama ■ Constitution and the Alabama Code.” Campbell, 159 So.3d at 10. Here, the circuit court had subject-matter jurisdiction over Mrs. Miller’s tort claim against the City defendants pursuant to § 12—11—30(a), Ala. Code, 1975, which states, in pertinent part: “The circuit court shall have exclusive original jurisdiction of all civil actions in which the matter in. .controversy exceeds ten thousand dollars ($10,000), exclusive of interest and costs .... ” Even assuming Unum is an indispensable party, its inclusion in this action is not what would provide the circuit court with subject-matter jurisdiction to hear the case. Campbell, 159 So.3d at 10. Rather, the circuit court already had jurisdiction over the case pursuant to § 12—11— 30.[5]
We now address Mrs. Miller’s argument that Unum is not an indispensable party. Below, .the City defendants argued that Unum is an indispensable party to this action because Mrs.'Miller.is seeking “lost life insurance proceeds” as damages. The City defendants argued that, under the policy, Unum is. the party obligated to *231 pay Mrs, Miller any life-insurance benefits to which she is entitled. The City defendants argued that Mrs. Miller’s claim is actually one alleging breach of contract, not misrepresentation, and that, as a party to the policy, Unum is an indispensable party.
Mrs. Miller argues on appeal that the City defendants have mischaracterized her claim. Mrs. Miller argues that her claim is not one alleging breach of contract against Unum, but one alleging misrepresentation against the City defendants. Mrs. Miller specifically states that Unum has no contractual obligation to pay her $151,000 in life-insurance benefits. This is so, Mrs. Miller argues, because the Millers acted on the misrepresentation made by Roberts and Crutchfield and converted Mr. Miller’s insurance to retiree life insurance, thereby diminishing the amount of life-insurance benefit to which Mrs. Miller was contractually entitled from $151,000 to $50,000. Mrs. Miller is not alleging breach of contract. In fact, Mrs. Miller acknowledges that Unum paid her exactly what was required under the policy. See Mrs. Miller’s brief, at p. 19.
Instead, Mrs. Miller’s claim alleges misrepresentation against the City defendants. Mrs. Miller alleges that Roberts and Crutchfield misrepresented to the Millers the terms of the policy, which the Millers did not have a copy of and which the City defendants did not aid the Millers in obtaining a copy of even though requested to do so by Mrs. Miller. The specific misrepresentation alleged is that Roberts and Crutchfield informed the Millers that their only option was to convert Mr. Miller’s life insurance from active-employee to retiree life insurance, thereby decreasing the amount of life insurance Mrs. Miller would be entitled to upon Mr. Miller’s death from $151,000 to $50,000. Neither Roberts nor Crutchfield informed the Millers of the “disability waiver of premium benefit” to which Mr. Miller was allegedly entitled under the policy. That benefit would have allowed Mr. Miller to not convert his life insurance to retiree life insurance and keep his active-employee life insurance, thereby entitling Mrs. Miller to the full $151,000 upon Mr, Miller’s death. Mrs. Miller alleges that the Millers acted on the misrepresentation made by Roberts and Crutchfield to Mrs. Miller’s detriment.
We find Mrs. Miller’s argument persuasive. Mrs. Miller is not asserting a breach-of-contract claim against Unum. Mrs. Miller. is clearly asserting a misrepresentation claim against the City defendants. It- is not alleged, nor is there any evidence indicating, that Unum had anything to do with the misrepresentation allegedly made by Roberts and Crutchfield.. Accordingly, Unum is not an indispensable party to this action. Therefore, to the extent, if any, the circuit court based its summary judgment in favor of the City defendants on this argument of the. City defendants, it erred.
B. Is Unum required to be joined as a party under § 11-47-191? .
The City defendants argued below that Mrs. Miller was required to join Unum ás a party under § 11—47—191, which states, in pertinent part:
“(a) The injured party, if he institutes a civil action against the municipality for damages suffered by him, shall also join such other person or persons or corporation so "liable as defendant or defendants of the civil action, and no judgment. shall be entered against the city or town unless judgment is entered against such other person or corporation so liable for such injury ... and if a civil action be brought against the city, or town alone and it is made to appear that any perspn or corporation ought to be joined as a defendant in the action according to the provisions in Section ,11- *232 47-190, the action shall be dismissed
[[Image here]]
The City defendants correctly note that Mrs. Miller has not made any argument directly related to the application of § 11-47-191.
However, although Mrs. Miller has not specifically discussed the application of § 11-47-191, Mrs. Miller has thoroughly argued and demonstrated that Unum has no potential liability based on Mrs. Miller’s misrepresentation claim. As discussed in the previous section, Mrs. Miller has alleged that Roberts and Crutchfield made a misrepresentation to the Millers that caused them to act to Mrs. Miller’s detriment. Mrs. Miller has alleged that this is the sole cause of her claimed damages. Mrs. Miller has made no allegation that Unum breached the policy or acted in a tortious manner. Mrs. Miller did request that Unum treat Mr. Miller’s life-insurance policy as that of an active employee rather than a retired employee. Unum refused Mrs. Miller’s request; Mrs. Miller acknowledges that Unum was under no contractual obligation to honor her request. There is no evidence indicating that Unum is liable for Mrs. Miller’s damages, if any. Accordingly, although Mrs. Miller did not cite § 11-47-191 in her original brief before this Court, she has demonstrated that Unum has no potential liability based on her sole claim of misrepresentation. Therefore, the circuit court erred insofar as it based its summary judgment in favor of the City defendants on this argument.
C. Is Mrs. Miller’s misrepresentation claim barred under § 11-47-23 or § 6-2-38?
Mrs. Miller addresses the City defendants’ argument asserted below that her misrepresentation claim is barred by § 11-47-23, which states: “All claims against the municipality ... shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.” (Emphasis added.) Mrs. Miller also addresses the City defendants’ argument that her claim was barred by the statute of limitations in § 6-2-38. The determinative issue is when Mrs. Miller’s misrepresentation claim accrued.
Below, the City defendants argued that Mrs. Miller’s claim against them accrued on March 28, 2013, the day Roberts and Crutchfield made the alleged misrepresentation complained of by Mrs. Miller. The City defendants, argued that, under § 11-47-23, Mrs. Miller had to file her claim with the City within six months of March 28, 2013. Mrs. Miller did not do so; she filed her claim with the City on January 16, 2015, which is more than six months from March 28, 2013. Accordingly, the City defendants argued that Mrs. Miller’s action against the City defendants was barred by § 11-47-23. The City defendants also argued below that, pursuant to § 6-2-38, Mrs. Miller was required to file her action against them within two years of March 28, 2013. Mrs. Miller did not file her action against the City defendants until May 4, 2015, more than two years from March 28, 2013. Accordingly, the City defendants argued that Mrs. Miller’s action was barred under § 6-2-38.
Mrs. Miller argues on appeal that her misrepresentation claim did not accrue on March 28, 2013, the day Roberts and Crutchfield made the alleged misrepresentation that is the basis of Mrs. Miller’s claim against the City defendants. Instead, Mrs.. Miller argues that her misrepresentation claim did not accrue until she discovered that Roberts and Crutchfield actually had made a misrepresentation.' Mrs. Miller argues that she did not discover, and could not have discovered, the misrepresentation until she received a copy of the summary *233 of the benefits of the policy from the City in December 2014. Mrs. Miller is correct.
In City of Mobile v. Cooks, 915 So.2d 29, 33 (Ala. 2005), this Court set forth the following concerning when a cause of action accrues under § 11-47-23: .
“A cause of action accrues under § 11-47-23 when an action can be maintained. Couch v. City of Sheffield, 708 So.2d 144 (Ala. 1998); Hill v. City of Huntsville, 590 So.2d 876 (Ala. 1991). This Court has stated the following with regard to when a cause of action accrues:
“ ‘ “The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action ‘accrues.’ The cause of action ‘accrues’ as soon as the party in whose favor it arises is entitled to maintain an action thereon.” ’ ”
(Quoting Ex parte Floyd, 796 So.2d 303, 308 (Ala. 2001), quoting in turn Garrett v. Raytheon Co., 368 So.2d 516, 518-19 (Ala. 1979).)
In Bryant Bank v. Talmage Kirkland & Co., 155 So.3d 231, 235-37 (Ala. 2014), a ease relied upon by Mrs. Miller, this Court set forth the following concerning when a misrepresentation claim accrues:
“A negligent misrepresentation constitutes legal fraud. See § 6-5-101, Ala. Code 1975 (‘Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.’). Therefore, negligent-misrepresentation claims are subject to a two-year statute of limitations, which begins running when the plaintiff discovers, or should have discovered,' the fact constituting the fraud. See- § 6—2—38(1) (‘All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.’); § 6-2-3, Ala. Code 1975 (‘In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.’).[6] In Auto-Owners Insurance Co. v. Abston, 822 So.2d 1187, 1194-95 (Ala. 2001), this Court set forth the standard for evaluating when a fraud claim accrues and, therefore, when the statutory limitations period commences:
[[Image here]]
“ ‘... For [fraud] cases ... § 6-2-3 does not “save” a plaintiffs fraud claim so that the statutory limitations period does not begin to run until that plaintiff has some sort of actual knowledge of fraud. Instead, under Foremost [Insurance Co. v. Parham, 693 So.2d 409 .(Ala. 1997) ], the limitations period begins to run when the plaintiff was privy to facts which would “provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.” Willcutt v. Union Oil Co., 432 So.2d 1217, 1219 (Ala. 1983) (quoting Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 397, 281 So.2d 636 (1973)); see also Jefferson County Truck Growers Ass’n v. Tanner, 341 So.2d 485, 488 (Ala. 1977) (“Fraud is deemed *234 to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that facts were known which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.”).’
. “(Final emphasis added.)
“The question of when a person of reasonable prudence would have discovered .the alleged fraud is generally a question of fact within the purview of a jury. As this Court stated in Jim Walter Homes, Inc, v. Kendrick, 810 So.2d 645, 650 (Ala. 2001):
“‘“When a claim accrues, for statute-of-limitations purposes, is a question of law if the facts are undisputed and the evidence warrants but one conclusion. However, when a disputed issue of fact is raised, the determination of the date of accrual of a cause of action for statute-of-limitations purposes is a question of fact to be submitted to and decided by a jury.”
“ ‘Kindred v. Burlington Northern R.R., 742 So.2d 155, 157 (Ala. 1999) (citations omitted).
“ “‘A fraud action is subject to a two-year statute of limitations. Ala. Code 1975, § 6-2-38. However, the fraud claim accrues only when the plaintiff discovers the fraud or when the plaintiff, acting as a reasonable person, should have discovered the fraud. Ala. Code 1975, § 6-2-3.... ‘The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases in which the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud.’ Hicks v. Globe Life & Accident Insurance Co., 584 So.2d 458, 463 (Ala. 1991)(emphasis in original).”
“ ‘Liberty Nat’l Life Ins. Co. v. McAllister, 675 So.2d 1292, 1297 (Ala. 1995)(some citations omitted).’ ”
In the present case, Mrs.- Miller discovered the misrepresentation allegedly made by Roberts and Crutchfield when Mrs. Miller obtained a copy of the summary of benefits and discovered that Roberts and Crutchfield had misinformed the Millers about the benefits available to Mr, Miller under the policy, The City defendants have not offered any argument indicating that Mrs. Miller could have discovered the misrepresentation made by Roberts and Crutchfield without knowing what the policy actually provided. Instead, the City defendants argue that Mrs. Miller “should have discovered any alleged misrepresentation on March 28, 2013, when Roberts and Crutchfield gave [the] Miller[s] documents identifying Unum ... as [Mr. Miller’s] insurer.” The City defendants’ brief, at p. 47. It is undisputed that Roberts and Crutchfield did not provide the Millers with a copy of the policy at the March 28, 2013, meeting. Apparently, the City defendants are arguing that Mrs. Miller should have discovered the misrepresentation on March 28, 2013, because Mrs. Miller should have, immediately following the meeting with Roberts and Crutchfield, contacted Unum to confirm the information Roberts and Crutchfield had given the Millers about the policy.
" The City defendants have not presented any evidence indicating that the Millers had any reason to doubt the information Roberts and Crutchfield gave the Millers on March 28, 2013. In fact, Roberts’s affidavit states: “One of my duties as a Pension Coordinator is to answer questions that employees may have' regarding pension benefits. The City of Birmingham has authorized me, in my capacity as a Pension Coordinator, to answer employee questions concerning pension benefits.” Similarly, *235 Crutchfield’s affidavit states: “One of. my duties as a Personnel Technician is to answer questions that employees may have regarding employee life insurance benefits. The City of Birmingham has authorized me, in my capacity as a Personnel Technician, to answer employee questions concerning life insurance benefits.” Roberts and Crutchfield had the authority to answer the Millers’ questions about the policy. There is evidence indicating that Roberts and Crutchfield informed the Millers that Unum was the insurer, but there is no evidence indicating that Roberts or Crutchfield instructed the Millers to contact Unum if they had any further questions regarding the benefits to which Mr. Miller was entitled under the policy.
Mrs. Miller’s affidavit indicates that she did request a copy of the policy at the March 28, 2013, meeting.[7] In their affidavits, Roberts and Crutchfield state that no one requested a copy of the policy at the meeting. Viewing the facts in a light most favorable to Mrs. Miller, the nonmovánt, we assume that Mrs. Miller did request a copy of the policy on March 28, 2013. Further, the facts indicate that the Millers attempted to obtain a copy of the policy by requesting it from some of Mr. Miller’s coworkers. There are no facts, however, indicating that the Millers ever requested a copy of the policy from Unum directly. Mrs. Miller finally obtained a copy "of the summary of "the benefits of the policy in December 2014, at which time she learned that Roberts and Crutchfield had misrepresented the terms of the policy.
“When a claim accrues, for statute-of-limitations purposes, is a question of law if the facts are undisputed and the evidence warrants but one conclusion.” Kindred v. Burlington Northern R.R., 742 So.2d 155, 157 (Ala. 1999) (emphasis added). Further, “[t]he question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases in which the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud.” Hicks v. Globe Life & Accident Ins. Co., 584 So.2d 458, 463 (Ala. 1991). The facts concerning when Mrs. Miller’s cause of action accrued are, with the exception of one rather insignificant fact, undisputed. However, we cannot say that these undisputed facts warrant but one conclusion. There are no facts indicating that Mrs. Miller actually knew of Roberts’s and Crutchfield’s alleged misrepresentation until December 2014. The City defendants argue, however, that Mrs. Miller should have known of the alleged misrepresentation on March 28, 2013, However, the City defendants have presented no evidence indicating that Unum would have provided Mrs. Miller with a copy of the policy or, even if Unum were to have complied with a request.from Mrs. Miller for the policy, when Mrs. Miller would have obtained a copy of the-policy.
The question to be answered is whether facts existed before December 2014 (when Mrs. Miller actually knew of the alleged misrepresentation made by- Roberts and Crutchfield) that would have put a reason *236 able person on notice of fraud. Although the facts are not disputed, the facts do not warrant only one conclusion. This is a question for the jury to decide. Accordingly, the City defendants’ argument that Mrs. Miller’s misrepresentation claim is barred under § 11-47-23 and/or § 6-2-38 does not present a valid basis for the summary judgment in favor of the City defendants. The summary judgment is in error to the extent it is based upon this ground.
D. Is the City entitled to immunity under § 11-47-190?
Lastly, Mrs. Miller argues that the City is not entitled to immunity under § 11-47-190 from any liability arising from her claim of misrepresentation. Mrs. Miller argues that her misrepresentation claim is “beyond the scope of immunity under Ala. Code [1975,] § 11-47-190.” Mrs. Miller’s brief, at p. 50.
Section 11-47-190 states, in pertinent part:
“No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty .... ”
In interpreting § 11-47-190, this Court has stated:
“Section 11-47-190, Ala. 1975, provides that a municipality is immune from tort liability ‘unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty.’ This statute limits a municipality’s liability for the acts of its agents to those acts that are negligent, careless, or unskillful. Section 11-47-190 provides a municipality immunity from liability for the acts of its agents that are carried out in bad faith or with malice. Borders [v. City of Huntsville], 875 So.2d [1168] at 1183 [ (Ala. 2003) ] (quoting Ex parte City of Gadsden, 718 So.2d 716, 721 (Ala. 1998)).”
Ex parte City of Tuskegee, 932 So.2d 895, 910 (Ala. 2005). See also Cremeens v. City of Montgomery, 779 So.2d 1190, 1201 (Ala. 2000)(“A municipality cannot be held liable for the intentional torts of its employees. See Ala. Code 1975, § 11-47-190.”); Town of Loxley v. Coleman, 720 So.2d 907, 909 (Ala. 1998) (“This Court has construed § 11-47-190 to exclude liability for wanton misconduct.”).
Mrs. Miller alleged in her complaint that the statements made by Roberts and Crutchfield “were reckless, wanton, grossly negligent, and/or negligent.” As part of her misrepresentation claim, Mrs. Miller alleged that the City defendants were wanton in their alleged misrepresentation to the Millers. In Hilliard v. City of Huntsville, 585 So.2d 889, 892 (Ala. 1991), this Court stated: “Section 11-47-190 limits the liability of municipalities to injuries suffered through ‘neglect, carelessness or unskillfulness.’ Neighbors v. City of Birmingham, 384 So.2d 113 (Ala. 1980). To construe this statute to include an action for wanton conduct would expand the language of the statute beyond its plain meaning.” (Emphasis added.) Section 11-47-190 limits the City’s liability for claims arising from wanton misconduct. Therefore, the circuit court’s summary judgment in favor of the City was not in error insofar as it was based on the City defendants’ argument that the City is immune from liability for Mrs. Miller’s claim that the City defendants were wanton in their alleged misrepresentation to the Millers.
*237 This does not end our analysis, however, because Mrs. Miller also alleged in her complaint that the City defendants were negligent and reckless in their alleged misrepresentation to the Millers. Other than § 11-^17—190, Mrs. Miller does not cite any authority in her brief to support her argument. It is evident under the plain language of § 11-47-190 that the City may be held liable for damages arising out of the negligence of Roberts and Crutchfield.[8] Therefore, we reverse the summary judgment insofar as it held that the City could not be held liable for damages arising out of Mrs. Miller’s claim that Roberts and Crutchfield made a negligent misrepresentation to the Millers.
However, Mrs. Miller has not cited any authority indicating that a municipality is not immune from liability arising from the reckless conduct of its agents. In Jimmy Day Plumbing & Heating, Inc, v. Smith, 964 So.2d 1, 9 (Ala. 2007), this Court stated:
“Rule 28(a)(10), Ala. R. App. P., requires that arguments in an appellant’s brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ Further, ‘it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.’ State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala. 2005)(citing Ex parte Showers, 812 So.2d 277, 281 (Ala. 2001)). This is so, because ‘“it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” ’ Butler v. Town of Argo, 871 So.2d 1, 20 (Ala. 2003)(quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala. 1994)).”
Therefore, to the extent Mrs. Miller is arguing that the circuit court erred in determining that the City is immune from any liability arising out of her allegation that Roberts and Crutchfield were reckless in their alleged misrepresentation to the Millers, we decline to address this issue.
In summary, to the extent the circuit court based its summary judgment in favor of the City defendants on the City defendants’ argument that the City is entitled to immunity under § 11-47-190, we affirm the summary judgment as to Mrs. Miller’s claim that Roberts and Crutchfield were wanton and reckless in their alleged misrepresentation to the Millers, and we reverse the summary judgment as to Mrs. Miller’s claim that Roberts and Crutchfield were negligent in their alleged misrepresentation to the Millers.
IV. Conclusion
Based on the foregoing, we affirm the circuit court’s summary judgment in favor of the City insofar as the circuit court based its summary judgment in favor of the City on the City defendants’ argument that the City is entitled to immunity under § 11-47-190 from Mrs. Miller’s claim alleging wanton and reckless misrepresentation. However, we reverse the circuit court’s summary judgment in favor of the City defendants in all other respects. We remand this cause to the circuit court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
*238 Stuart, Main, and Wise, JJ., concur.
Shaw, J., concurs in the result.

. As discussed below, the circuit court struck some of the quoted portions of Mrs. Miller’s affidavit.

. In the heading pertaining to this particular argument, the City defendants generally stated that the circuit court “must exclude all Unum ... documents.” However, the City defendants presented argument pertaining only to "Exhibit D & F." Accordingly, the City defendants limited their motion to strike to those two exhibits.

. The City defendants did not move to strike the exhibit Mrs. Miller identified as “Exhibit E.” This exhibit is the copy of the sum'mary of the benefits of the policy sent to Mrs! Miller by Polk.

. The parties agree on appeal that Mrs. Miller withdrew her" summary-judgment motion. See Mrs. Miller’s brief, at p. 6 n. 3, and the City defendants’ brief, at p. 34. The only thing that the parties direct this Court’s attention to in support of this assertion is a statement in Mrs. Miller's reply to the City defendants’ response to Mrs. Miller's summary-judgment motion that she had “agreed to withdraw her motion for [a] summary judgment without prejudice.” However, nothing in the record indicates that Mrs. Miller’s summary-judgment motion was ever actually withdrawn. Mrs, Miller's summary-judgment motion remained pending when the circuit court ruled upon it.

. Although not essential to our ruling, we note that the City defendants asserted this same argument as the sole basis for their motion to quash, seeking to prohibit Mrs. Miller from deposing Roberts and Crutchfield. Because the failure to join an indispensable party does not deprive a circuit court of subject-matter jurisdiction over a case, the circuit court’s granting of the City defendants' motion to quash was in-error.

. In the present case, the City defendants argue that Mrs. Miller’s claim is also subject to the six-month statute of limitations for claims against a municipality set forth in § 11-47-23.

. We note that the City defendants filed a motion to strike this portion of Mrs. Miller's affidavit as hearsay. The City defendants argued below that this portion of Mrs. Miller’s affidavit was not based on her personal knowledge. As explained above, it is unclear if the circuit court granted the City defendánts’ motion to strike. To the extent the circuit court did grant this particular motion to strike filed by the City defendants, it exceeded . its discretion in doing so. Clearly, Mrs. Miller has personal knowledge of whether she personally requested a copy of the policy at the March 28, 2013, meeting with Roberts and Crutchfield. We also nóte that the City defendants do not argue on appeal, as they did below, that this, portion of Mrs. Miller’s affidavit is hearsay. See the City defendants’ brief, at pp. 31-33.

. We note that Mrs. Miller also alleged that the City defendants were "grossly negligent.” In Town of Loxley v. Coleman, 720 So.2d 907, 909 (Ala. 1998), this Court stated that "[t]he word 'gross,' when used in connection with the word 'negligence,' implies nothing more than simple negligence. Stringer v. Alabama Midland R.R., 99 Ala. 397, 13 So. 75 (1893).”